UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENNIS PIOTROWSKI, | CASE NO. 1:21-CV-02430-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff Dennis Piotrowski filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. **§§** 1383(c) and 405(g). On December 30, 2021, pursuant to Local Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry dated Dec. 30, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Mr. Piotrowski filed for DIB and SSI on January 13, 2020, alleging a disability onset date of June 30, 2019. (Tr. 142-55). The claims were denied initially and on reconsideration. (Tr. 84-93; 98-105). He then requested a hearing before an Administrative Law Judge. (Tr. 107-08). Mr.

Piotrowski, represented by counsel, and a vocational expert (VE) testified at a hearing before the

ALJ on February 3, 2020. (Tr. 31-48). On March 4, 2021, the ALJ issued a written decision finding

Mr. Piotrowski not disabled. (Tr. 12-30). The Appeals Council denied Mr. Piotrowski's request for

review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R.

§§ 404.955, 404.981, 416.1455, and 416.1481). Mr. Piotrowski timely filed this action on

December 30, 2021. (ECF #1).

FACTUAL BACKGROUND[1]

## I.   ADMINISTRATIVE HEARING

The following summarizes the testimony of Mr. Piotrowski and VE Deborah Lee presented

during the hearing before the ALJ.

Mr. Piotrowski testified the primary reason he is unable to work is his back, shoulders, and

hands. (Tr. 34). He testified it hurts to stand after 15 minutes. (*Id.*). He cannot walk for a quarter

mile without intense pain, and he cannot sit for longer than a half hour without having to get up

and move around. (Tr. 34-35). He also has "trigger fingers," where his fingers lock up, making it

hurt to write. (Tr. 35). He cannot grasp things tightly (*Id.*). If he holds something too long, his

hands will be "stuck" there. (Tr. 39). He has lower back pain that becomes worse with standing,

walking, and reaching in front of him. (Tr. 35-36). The pain is better when he is in a fetal position.

(*Id.*). Lifting and reaching above his head are almost impossible. (Tr. 41).

---

[1]     Mr. Piotrowski has not challenged the ALJ's assessment of his mental impairments and the Commissioner limited her discussion of the evidence accordingly. I will do the same here.

Mr. Piotrowski also has sleep apnea. (Tr. 36). Even with assistance from a BiPAP machine, he only sleeps four hours straight. (Tr. 37). He experiences fatigue during the day and is forgetful (*Id.*). He takes a one-hour nap around four days a week. (Tr. 37-38).

Mr. Piotrowski usually does not cook. (Tr. 30). Because he does not have money to pay rent, he tries to do chores around the house to help. (*Id.*). After any task, he feels "whipped" "just from the pain." (*Id.*). It takes him almost a half hour to vacuum one room. (*Id.*). His girlfriend does his laundry. (*Id.*). He will accompany her to the grocery store, but must lean over on the carts due to back pain and is not able to do much other than walk along with her. (*Id.*). He has no problem showering but takes a while to get dressed. (*Id.*). A couple of times a month, Mr. Piotrowski's pain is so bad that he is unable to get out of bed. (*Id.*).

According to Ms. Lee, Mr. Piotrowski's past work was as a production assembler (light exertion and unskilled) and conveyer feeder (medium exertion and unskilled). (Tr. 43-45). Ms. Lee testified that an individual who is 47 years old, has a GED equivalent to 12-year education, limited to work of light exertional requirements but has additional non-exertional limitations, including no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional climbing of ramps and stairs; occasional stooping, kneeling, and crouching; and crawling; and occasional overhead reaching without limitation to lateral reaching could not perform Mr. Piotrowski's past jobs but could perform jobs such as housekeeping cleaner, inspector hand packager, or cafeteria attendant. (*Id.*). If the same person were off-task 20% of the time, that person could not perform jobs existing in significant numbers in the economy. (Tr. 46).

Additionally, VE Lee testified if the person was limited to occasional use of their dominant upper extremity, while switching dominance would have an impact on any job, cleaner allows for

uneven use of the hands. (Tr. 46-47). If the same person would be absent three days per month, that person could not perform jobs existing in significant numbers in the economy. (Tr. 47).

## II. PERSONAL AND VOCATIONAL EVIDENCE

Mr. Piotrowski was 45 years old at the time of his alleged onset date, and 47 years old at the time of the administrative hearing. (Tr. 50). Mr. Piotrowski completed his GED in 2018. (Tr. 169). In the past, Mr. Piotrowski has been employed as production assembler and conveyer feeder (Tr. 43-45).

## III. RELEVANT MEDICAL EVIDENCE

Mr. Piotrowski has a history of simultaneous pain in his shoulders, back, foot, and hands. He presented to Dr. Sanjay Rao in October 2019 complaining of foot and shoulder pain. (Tr. 300). A physical examination showed an inability to abduct his shoulders beyond 90 degrees bilaterally, and pain with passive abduction beyond 90 degrees. (*Id.*). An x-ray showed normal joint space and no arthritis. (Tr. 299). Mr. Piotrowski's shoulder pain was "more likely" caused by rotator cuff tendinopathy. (*Id.*). Mr. Piotrowski reported a worsening of pain on December 7, 2020. (Tr. 1334). He was assessed with bilateral rotator cuff tendonitis, cervicalgia with cervical radiculopathy, and low back pain (Tr. 1335).

An x-ray of his foot showed severe osteoarthritis in his first toe, and a podiatry consult was made. (*Id.*). During his podiatric consult in December 2019, imaging showed significant joint space narrowing in his right foot. (Tr. 285, 287). He reported in February 2020 that his shoulder had shown some improvement with physical therapy, and an examination showed that he had normal strength and stability in his shoulders. (Tr. 572–73). The next month, Mr. Piotrowski

demonstrated tenderness and decreased range of motion in both of his shoulders but normal strength and stability. (Tr. 556). He reported in April 2020 that his pain was "tolerable." (Tr. 511).

On June 16, 2020, Mr. Piotrowski had surgery on his right foot for osteoarthritis with a decompression osteotomy. (Tr. 837). As of June 29, 2020, his neurovascular status was grossly intact. (Tr. 827). Mr. Piotrowski reported during counseling, however, that he was still having pain in his right foot on July 13, 2020. (Tr. 962). He began physical therapy for his post-surgery foot pain in July 2020. (Tr. 837, 1171).

Mr. Piotrowski began treating with Cleveland Clinic Pain Management Department on July 17, 2020. (Tr. 1139). At that time, he had an antalgic gait with crutches. (Tr. 1140). It was noted that he had a long history of chronic daily headaches, which were possible migraines. (Tr. 1142). As of July 31, 2020, Mr. Piotrowski was observed ambulating with a cane in his right hand. (Tr. 1174). His gait was still antalgic with a cane on August 7, 2020. (Tr. 1188). During his September 1, 2020 examination, he was observed with chronic lower back pain with right sided sciatica and still presented with an antalgic gait. (Tr. 1231).

On July 30, 2020, he presented to Dr. Caitlin Lewis with acute triggering in the left 3rd and 4th digits along with the right 4th digit. (Tr. 1158). The pain was worse with gripping (Id.). X-rays revealed trigger middle finger of left hand, and trigger ring finger of right hand. (Tr. 1161). He was given injections (Id.). During his September 30, 2020 examination, he was doing better with the 2nd digit, but worse with the 3rd and 4th digits. (Tr. 1267). He was again given injections. (Tr. 1270). As of November 2, 2020, he was doing better with minimal symptoms on the right hand (Tr. 1308). Mr. Piotrowski reported in November 2020 that his steroid injections in his fingers resolved his triggering, and he was feeling no pain. (Tr. 1308). A December 2020 physical

examination showed that he had normal strength and stability in his shoulders, albeit with tenderness. (Tr. 1335).

On July 24, 2020, during a counseling session, he expressed concerns about chronic pain in his foot and shoulder. (Tr. 986). As of August 26, 2020, his pain was beginning to subside in his foot. (Tr. 1015). During his September 16, 2020 counseling session, however, he reported that he still had pain in his right foot. (Tr. 1024). He still had foot pain on October 14, 2020. (Tr. 1065).

On September 1, 2020, Mr. Piotrowski was observed with chronic lower back pain with right sided sciatica and an antalgic gait. (Tr. 1231). On December 15, 2020, Mr. Piotrowski was referred for an opinion regarding his lower back pain. (Tr. 1345). The pain was aggravated by standing and walking. (*Id.*). The impression was that Mr. Piotrowski had spondylolisthesis of the lumbar region, degeneration of lumbar intervertebral disc, lumbar facet arthropathy, low back pain without sciatica, and cervicalgia. (Tr. 1350).

## IV. MEDICAL OPINIONS

State agency medical consultants reviewed Mr. Piotrowski's record at the initial and reconsideration levels. Mr. Piotrowski completed a Function Report in March 2020 (Tr. 191-198) and June 2020. (Tr. 209-216).

In April 2020, state agency reviewing consultant Steve McKee, M.D., reviewed Mr. Piotrowski medical records and opined that he could perform light work, except that he could only occasionally climb ladders, ramps, stairs, ropes, or scaffolds, with no bilateral overhead lifting. (Tr. 54–55; 63-65). State agency reviewing consultant Lynne Torello, M.D., reviewed Mr. Piotrowski records at the time of reconsideration in July 2020 and found the same limitations. (Tr. 72–73; 81-82).

6

## THE ALJ'S DECISION

The ALJ's decision, dated March 4, 2021, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since June 30, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.). (Tr. 58-67).

3. The claimant has the following severe impairments: arthritis of the right foot, status-post osteotomy; tendonitis of the shoulders; general anxiety disorder with panic; and drug and alcohol abuse in reported remission. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for no climbing of ladders, ropes or scaffolds; frequent balancing; occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling; occasional overhead reaching without limitation of lateral reaching; and mental limitation that he perform routine tasks without fast pace, strict quotas or frequent duty changes (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 10, 1974 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

7

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-26).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the

ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

9

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

I.  **Any Constitutional defects in Andrew Saul's appointment as Commissioner of the Social Security Administration do not warrant remand in Mr. Piotrowski's case.**

Mr. Piotrowski argues that the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers and that the decision by an ALJ who derived his authority from Andrew Saul was constitutionally defective. (Pl.'s Br., ECF #9, PageID

10

1405). The Commissioner agrees with Mr. Piotrowski that 42 U.S.C. § 902(a)(3)'s removal provision "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Comm'r's Br., ECF #10, PageID 1428). But even so, the Commissioner responds that Mr. Piotrowski's separation of powers argument does not entitle him to a rehearing of his claim. (*Id.*).

Initially, I conclude Mr. Piotrowski has not forfeited his ability to present his constitutional challenge even though he did not raise it at the administrative level. (See Pl.'s Br., ECF #9, PageID 1415). In *Carr v. Saul*, 141 S. Ct. 1352 (2021), the Supreme Court held a claimant need not exhaust a constitutional claim at the administrative level, but instead may present it for the first time at the district court level. *Id.* at 1362. Even though Mr. Piotrowski clears this, he still is not entitled to an order of remand from this Court.

In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court found that a statutory restriction on the President's ability to remove the head of an agency "only for inefficiency, neglect, or malfeasance" violates the separation of powers and is unconstitutional. *Id.* at 2197. The Court further found the offending clause was severable from the other portions of its Act, thereby maintaining CFPB intact as an agency. *Id.* at 2208, 2211.

Subsequently, in *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Court considered the Federal Housing Finance Agency (FHFA) and its enabling statute, which contained a provision stating that the head of FHFA was removable by the President "only 'for cause.'" *Id.* at 1770. The Court concluded such a provision violated the separation of powers and was unconstitutional. *Id.* Relying on *Seila Law*, the Court further explained the unconstitutionality of a removal provision does not strip an agency head of the authority to carry out the other functions of the office. *Collins*, 141

11

S.Ct. at 1788; *see also id.* at n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . .") (citing *Seila Law*, 140 S.Ct. at 2207-11). Instead, to obtain remand, the plaintiff must demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See Collins*, 141 S.Ct. at 1788-89. The absence of a nexus between the purported harm and the challenged removal restriction "defeats the . . . argument for setting aside" agency action. *Id.* at 1787.

Mr. Piotrowski makes various claims alleging he has suffered harm due to the unconstitutional removal provisions in § 902(a)(3). (Pl.'s Br., ECF #9, PageID 1412-15). None are sufficient.

Initially, Mr. Piotrowski argues he did not receive a valid administrative process because the ALJ's authority to make disability determinations was derived from a Commissioner who was subject to an unconstitutional removal provision. (*Id.*). But Courts have routinely rejected similar defective delegation arguments. *See, e.g., Cutlip v. Kijakazi*, No. 1:20-cv-202, 2022 WL 812378, at *4–5 (W.D. Ky. Mar. 16, 2022) (rejecting argument that ALJ and Appeals Counsel Judges derived their authority from the Commissioner who was not constitutionally appointed); *Lynch v. Commr of Soc. Sec.*, No. 1:21-cv-556, 2022 WL 614777, at *16 (N.D. Ohio Mar. 2, 2022) (finding that compensable injury was not established by claimant's assertion that the ALJ who decided the case was under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate); *Fauvie v. Commissioner of Social Security*, 2022 WL 2662866, at *4 (N.D.Ohio, 2022).

Mr. Piotrowski's allegations as to former Commissioner Saul's (and Acting Commissioner Kijakazi's) inability to delegate authority to lesser officials in the Social Security Administration are unavailing. As in *Collins*, the existence of an unconstitutional removal provision did not strip then-Commissioner Saul of his authority to carry out the functions of his office, including the authority to delegate disability determinations to ALJs and to implement changes to Agency regulations. As noted by the Court in *Collins*, "[a]lthough the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by FHFA ... as void." 141 S. Ct. at 1787 (emphasis in original). The *Collins* Court further found "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. *Id.* at 1788 ("unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office, including implementing the third amendment") (citing *Seila Law*, 140 S. Ct. at 2207-11). Rather, "to obtain reversal of an agency decision, a plaintiff would need to demonstrate compensable harm flowing from the unconstitutional removal clause." *Id.* at 1788-89.

Mr. Piotrowski asserts that "Defendant ignored the injuries to Plaintiff in that in addition to the adverse decisions, [Mr. Piotrowski] did not receive the constitutionally valid adjudications process to which he was entitled." (Pl.'s Br., ECF #9, PageID 1414). Mr. Piotrowski reasons that the notice terminating Mr. Saul noted that he had undermined and politicized Social Security disability benefits. (*Id.* at PageID 1415). Thus, Mr. Piotrowski believes it can be inferred that the policy adjudication framework and processes established by Mr. Saul was the primary and lead

13

reason for President Biden's dissatisfaction. (*Id.*). In addition, Mr. Piotrowski infers President Biden believed Mr. Saul had infringed on the constitutional due process rights of disability applicants. (*Id.*).

Although "the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment," it is still possible for an unconstitutional statutory provision to inflict compensable harm entitling claimants to retrospective relief. *Collins*, 141 S. Ct. at 1788-89. The Supreme Court offered examples of situations where unconstitutional removal restrictions could inflict compensable harm:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1789. Notably, each example requires that the President specifically acknowledge being prevented from removing an agency head due to the unconstitutional statutory provision. Expressions of "displeasure" from the President, without more, do not demonstrate the type of compensable harm flowing from the removal provision contemplated by the *Collins* Court.

Mr. Piotrowski has not alleged that the President "asserted that he would remove the [Commissioner] if the statute did not stand in the way." *Id.* Rather, Mr. Piotrowski makes generalized statements and allusions as to the President's displeasure but does not point to public statements by the President stating that but for the statute, he would remove the Commissioner. Therefore, any argument Mr. Piotrowski makes to show compensable harm flowing from President Biden's inability to remove former Commissioner Saul due to the unconstitutional removal provision fails.

14

Mr. Piotrowski does not present any evidence showing that but for the removal restriction, his claim would have been decided differently. Under *Collins*, he must show that the "existence of [the removal restriction] alone tainted" the administrative decision. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021). By contrast, the Appeals Council denied Mr. Piotrowski's request for review during the tenure of Kilolo Kijakazi, whom President Biden appointed to serve as the Acting Commissioner of Social Security, replacing Commissioner Saul.

As a result, I conclude Mr. Piotrowski has not shown that Acting Director Kijakazi, the Appeals Council, or Judge Roscoe lacked authority to carry out the functions of their respective offices due to the constitutional defect in § 902(a)(3). *See Collins*, 141 S. Ct. at 1788 n.23 (noting that "unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office …").

Mr. Piotrowski's constitutional arguments are without merit and should be rejected by the District Court.

II.     **The ALJ's determination of Mr. Piotrowski's residual functional capacity was supported by substantial evidence.**

Mr. Piotrowski next argues that the ALJ committed harmful error at Step Two of the sequential analysis when his determination of Mr. Piotrowski's residual functional capacity (RFC) failed to include the combination of his symptoms (including those impairments the ALJ found were non-severe) that precluded him from engaging in substantial gainful activity on a full-time and sustained basis. (Pl.'s Br., ECF #9, PageID 1415). In particular, Mr. Piotrowski objects to the ALJ's determination that his sleep apnea, bilateral trigger finger, low back pain, headaches, and mild anemia (which was found to be polycythemia) were non-severe. (Pl.'s Br., ECF # 9, PageID

15

1416; Tr. 18). By contrast, of Mr. Piotrowski's physical impairments, the ALJ considered arthritis of the right foot and tendonitis of the shoulders to be severe. (Tr. 17).

At Step Two of the sequential analysis, to establish disability within the meaning of the Act, the claimant has the burden of proving he has a severe medically determinable impairment. *Dowey v. Comm'r of Soc. Sec.*, No. 5:17CV2489, 2018 WL 7681369, at *3 (N.D. Ohio Dec. 21, 2018), *report and recommendation adopted sub nom. Dowey v. Berryhill*, 2019 WL 580570 (N.D. Ohio Feb. 12, 2019) (citations omitted). An impairment qualifies as non-severe only if it would not affect a claimant's ability to work regardless of whether the claimant was sixty years old or only twenty-five, whether the claimant had a sixth-grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary. *Halcomb v. Bowen*, 819 F.2d 289 (6th Cir. 1987). An impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work. *Id.* A physical or mental impairment must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," not simply by claimant's statements of symptoms. *Long v. Apfel*, 1 Fed. App'x 326, 331 (6th Cir. Jan. 9, 2001) (quoting 20 C.F.R. § 416.908).

Mr. Piotrowski argues that some of his impairments – such as his trigger finger – should have been considered severe. (Pl.'s Br., ECF #9, PageID 1420). However, the ALJ did find severe physical impairments in Mr. Piotrowski's arthritis of the right foot, status-post osteotomy, and tendonitis of the shoulders. (Tr. 17). At Step Two, the severity determination is "a *de minimis* hurdle in the disability determination process," the goal of which is to "screen out totally groundless claims." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citations omitted).

The ALJ reasonably determined that Mr. Piotrowski's trigger finger impairment did not meet the durational requirements because it lasted less than 12 months and was controlled with treatment, including injections. (Tr. 18). *See Brown v. Comm'r of Soc. Sec.*, 1:18CV1272; 2019 WL 4451352, at \*5 (N.D. Ohio Sept. 17, 2019) (finding that the ALJ reasonably found the plaintiff's impairments did not meet the durational requirement and therefore were not severe); *see also James v. Comm'r of Soc. Sec.*, 1:18CV0377, 2019 WL 487191, at \*5 (N.D. Ohio Jan. 14, 2019) (finding that the ALJ reasonably found the plaintiff's impairment was not severe because it was controlled by medication) *report and recommendation adopted by* 2019 WL 481751 (N.D. Ohio Feb. 7, 2019).

Moreover, the ALJ's finding of at least one severe impairment means that Mr. Piotrowski has cleared Step Two and therefore the failure to find any other severe impairment constitutes harmless error. *Anthony*, 266 F. App'x at 457 (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240 (6th Cir. 1987)). Whether Mr. Piotrowski's remaining impairments are severe is not "legally relevant" given that the ALJ determined some impairments were severe and therefore had to consider *all* impairments throughout the decision. *Id.*

The remaining issue is whether the ALJ erred by failing to include in Mr. Piotrowski's residual functional capacity the combination of symptoms that would preclude him from substantial gainful activity on a full-time and sustained basis. An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Again, while it is generally unclear which impairments Mr. Piotrowski believes should have been accounted for in his residual functional capacity, his brief mainly discusses his trigger finger impairment and generalized pain, including bilateral lifting. I will address both in turn.

### A. Trigger Finger

Mr. Piotrowski first argues that the ALJ erred in failing to include in his residual functional capacity limitations related to his trigger finger impairment. (Pl.'s Br., ECF #9, PageID 1416). Mr. Piotrowski points to his medical records indicating acute triggering, imaging evidence, and instances of receiving injections to treat his trigger finger. (*Id.* at 1419-20; Tr. 1158, 1161,1267,1270).

The ALJ explicitly referenced the following evidence in his determination: Mr. Piotrowski reported that he has trouble with lifting due to bilateral trigger finger (Tr. 18); he presented in July 2020 with complaints of triggering and pain (*Id.*); he had 5/5 strength, normal range of motion and normal sensation on examination (*Id.*); imaging showed no acute abnormality and only mild degenerative changes (*Id.*); he was treated with injections and subsequently reported improvement (*Id.*); as of November 2020, the claimant reported this pain as a 0/10 and that his triggering stopped. (*Id.*).

The Commissioner argues the ALJ's analysis concluded that the trigger finger impairment lasted less than twelve months and therefore did not meet the durational requirements. Moreover, it was controlled with treatment and thus did not have more than a minimal effect on Mr. Piotrowski's basic work activities. (Comm'r's Br., ECF # 10, PageID 14-15; Tr. 18; *see* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration

18

requirement.")). Thus, the Commissioner argues the ALJ reasonably found the trigger finger was not a severe impairment. *Brown v. Comm'r of Soc. Sec.*, 2019 WL 4451352, at \*5 (N.D. Ohio Sept. 17, 2019) (finding that the ALJ reasonably found the plaintiff's impairments did not meet the durational requirement and therefore were not severe); *James v. Comm'r of Soc. Sec.*, 2019 WL 487191, at \*5 (N.D. Ohio Jan. 14, 2019) (finding that the ALJ reasonably found the plaintiff's impairment was not severe because it was controlled by medication).

In support of his argument, Mr. Piotrowski cites to the following evidence: that his fingers would lock up and it hurt to write (Pl.'s Br., ECF #9, PageID 1417; Tr. 35); he could not grasp things tightly (*Id.*); on July 30, 2020, he presented to Dr. Caitlin Lewis with acute triggering in the left 3rd and 4th digits along with the right 4th digit (*Id.* at PageID 1407; Tr. 1158); the pain was worse with gripping (*Id.*); after reviewing x-rays, he was found to have trigger ring finger of left hand, trigger middle finger of left hand, and trigger ring finger of right hand (*Id.*; Tr. 1161); he was given injections (*Id.*); during his September 30, 2020 examination, he was doing better with the 2nd digit, but worse with the 3rd and 4th digits (*Id.*, Tr. 1267); once again, he was given injections (*Id.*, Tr. 1270); and as of November 2, 2020, he was doing better with minimal symptoms on the right hand (Tr. 1308).

Mr. Piotrowski argues that the ALJ failed to include limitations related to the trigger finger impairments given that he had presented evidence regarding difficulties using his hands. He believes the limitations imposed by the trigger fingers caused more than a *de minimus* limitation on Mr. Piotrowski's ability to engage in substantial gainful activity on a sustained and full-time basis.

On review of the record, it appears that the ALJ's determination that Mr. Piotrowski's trigger finger impairment was a non-severe impairment is supported by substantial evidence. The

ALJ reviewed and considered the development and treatment of Mr. Piotrowski's trigger finger condition, which was successfully treated with injections. (Tr. 1267; 1270; 1308). The most recent medical record regarding the trigger finger impairment notes: "[s]ince last visit, he is doing better. Pain is 0/10 and triggering has stopped. Current treatment includes corticosteroid injections - resolved about 1.5-2 weeks after last injections. Minimal symptoms on R hand." (Tr. 1308).

Further, the reasons given by the ALJ clearly build an accurate and logical bridge between the evidence and the result. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Because the impairment appeared to be responding well to injections, did not continue to "trigger," and resulted in "0/10" pain, there is a logical and clear bridge between this evidence and a finding that the trigger finger on its own (or in combination with other impairments) does not prevent Mr. Piotrowski from engaging in substantial gainful activity. *Halcomb*, 819 F.2d at *3. Based on the entirety of the record, regardless of Mr. Piotrowski's age, education, or work experience, substantial evidence supports the ALJ's determination that the impairment would not affect his ability to work.

### B.  Pain

Next, Mr. Piotrowski argues that the ALJ committed harmful error in failing to include a limitation relating to Mr. Piotrowski's generalized pain in his residual functional capacity. (Pl.'s Br., ECF #9, PageID 1420). Mr. Piotrowski's brief is again unclear as to what impairments cause him pain such that it would interfere with his ability to sustain attention and concentration. (*See id.*). However, he argues that remand is necessary to consider the effects of his pain symptoms and the degree to which it would interfere with his ability to concentrate and complete activities. (*Id.* at PageID 1421).

20

Mr. Piotrowski points to the testimony of Ms. Lee that a person off-task 20% of the time and missing three days per month would be unable to work at all (*Id.*, citing Tr. 46, 47). Presumably, then, Mr. Piotrowski is arguing that his pain, alone or in combination with his other impairments, would interfere with his ability to concentrate 20% of the time and would require missing three days per month. However, he does not reference any particular evidence that the ALJ failed to consider or any particular failure in the ALJ's analysis. Without further guidance, the Court must affirm the Commissioner's conclusions absent a determination that the Commissioner or has made findings of fact unsupported by substantial evidence in the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

While the ALJ did find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged pain, he found that Mr. Piotrowski's statements concerning the intensity, persistence and limiting effects of the symptoms to be not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22). On review, I believe the ALJ's conclusions regarding the extent of Mr. Piotrowski's pain to be supported by substantial evidence.

The ALJ first reviewed Mr. Piotrowski's statements regarding his pain. In particular, he referenced Mr. Piotrowski's hearing testimony in which he explained his inability to sit or stand for extended periods of time due to pain; the limited mobility in his shoulders; his neck pain; his inability to walk for a quarter mile without intense pain, his inability to sit for more than 30 minutes; the constant pain in his low back; that the only remedy for his pain is to lie in fetal position; the difficulty reaching due to pain in his shoulders; his inability to do laundry and, occasionally, his inability to get out of bed. (Tr. 21-22).

21

The ALJ then compared this testimony with objective medical evidence. With respect to his bilateral shoulder pain, the ALJ reiterated Mr. Piotrowski's medical history, including his exhibited tenderness and inability to raise his arms above 90 degrees. (Tr. 22). He recounted Mr. Piotrowski's physical therapy, including a follow-up in February of 2020 which noted some improvement with physical therapy and demonstrated normal range of motion, strength, sensation, and stability. (*Id.*) Mr. Piotrowski reported that the pain in his shoulders improved after receiving cortisone injections and requested another injection in March of 2020. (*Id.*) At that time, he exhibited decreased forward flexion with internal rotation, but stability, muscle strength, and sensation were all normal. (*Id.*). The ALJ noted that as of April 2020, after physical therapy, Mr. Piotrowski reported his pain was "tolerable." (*Id.*). He was treated with cortisone injections in December of 2020, where an examination noted decreased active and passive range of motion bilaterally, point tenderness, no swelling or effusion, normal strength and normal stability. (*Id.*)

ALJ also examined Mr. Piotrowski's foot pain. (*Id.*) He acknowledged the limited painful range of motion in Mr. Piotrowski's right first metatarsophalangeal joint. (*Id.*). He referenced imaging which showed degenerative changes and narrowing of joint space. (*Id.*). After undergoing a decompression osteotomy and insertion of Cartiva implant in the joint, Mr. Piotrowski presented in July 2020 with acute post-operative pain, which was addressed with a Medrol dose pack and physical therapy. (*Id.*). In August 2020, he presented with no pain on palpation, and September 2020 treatment notes indicated that Mr. Piotrowski's osteotomy appears healed on x-rays and that he was doing well. (*Id.*).

The ALJ addressed both sources of pain in the residual functional capacity limitations. Namely, only occasional overhead reaching without limitation of lateral reaching to address his

22

shoulder pain and only occasional climbing of ramps and stairs, stooping, kneeling, crouching,

and crawling and no climbing of ladders, ropes, or scaffolds to address his foot pain. The ALJ

provided the following reasoning in his balancing of the medical evidence:

> Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms. The above residual functional capacity assessment is supported by and consistent with the objective medical evidence, including findings in clinical examinations. While the claimant does have severe impairments, the record shows that with regard to his shoulder impairment, the claimant exhibits normal stability and strength despite a decreased range of motion. (Exhibit 3F/19, 32; 6F/21, 60, 73; 10F/216). The record also notes that the claimant received benefit from cortisone injections. With regard to the claimant's foot impairment, recent treatment notes show that the claimant's osteotomy appears healed on x-rays and that the claimant was doing well. (Exhibit 10F/140- 141). With regard to his mental impairments, while the claimant's mental status examinations are rather benign with findings of normal mood and affect, normal behavior, normal judgment and thought content. (Exhibit 2F/4; 3F/18; 4F; 6F/48, 73; 7F; 9F/25; 10F/21, 112). To accommodate the claimant's physical impairments, the undersigned has included limitations to light exertion with additional postural and reaching limitations. His mental impairments have been accommodated with a limitation to no fast pace or strict quota production or frequent duty changes. The record indicates that the claimant reported that he started a job and stopped due to transportation issues (as opposed to a mental or physical impairment). (Exhibit 4F/47). In terms of activities, the claimant reports reading, watching television, doing puzzles, use of public transportation, taking out the trash, and walking the dog. (Exhibit 6E; 9E). The above findings support the limitations included in the residual functional capacity, but do not reflect an intensity, persistence, or frequency as would support the extent of the claimant's subjective allegations. In light of the evidence of record, the above residual functional capacity accommodates the claimant's limitations, but still does not preclude him from performing work.

(Tr. 24).

The ALJ's reasoning expressly reconciles the differences in Mr. Piotrowski's testimony

regarding the intensity of his pain with objective medical and non-medical evidence within the

record. It includes various accommodations for Mr. Piotrowski's severe impairments and explains

23

the necessity of each one with specific references to the pertinent medical and non-medical evidence.

To the extent that Mr. Piotrowski believes some other evidence should have been considered or some other consideration should have been made, his brief did not clarify that argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995) (citations omitted)).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity this Court is not afforded in its review. *Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *See Ulman*, 693 F.3d at 713-14.

Based on the foregoing, Mr. Piotrowski's arguments that the ALJ did not properly evaluate the evidence in determining the severity of his impairments are unpersuasive. The record evidence suggests Mr. Piotrowski has functional limitations resulting from his physical and mental impairments, and the ALJ included various limitations in the residual functional capacity to

24

address them. Mr. Piotrowski may object to the lack of further limitations. But the substantial

evidence standard of review is a constraining one in which courts must give significant deference

to the ALJ's "zone of choice." *Mullen*, 800 F.2d at 545. Given that the ALJ adequately explained

his findings and considered the relevant evidence in evaluating Mr. Piotrowski's residual

functional capacity, I cannot now reweigh or reevaluate that evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I

recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance

benefits and supplemental security income.

Dated: December 7, 2022

_____

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R.
Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly
asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation.** *Berkshire v.
Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object."** *Mr. Piotrowski v. Sec'y of Health and Hum. Servs.*, **932 F.2d 505, 509**

(6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Mr. Piotrowski*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).